# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

LEMANUEL JACKSON,

        Plaintiff,

v.                                    Case No. 03-C-941

OFFICER PFEIFFER,
OFFICER ROTTSCHOLL,
and KRISTIAN P. PERALES,

        Defendants,

# <u>ORDER</u>

Plaintiff Lemanuel Jackson, who is incarcerated at the Oakhill Correctional Institution, filed this <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983, on September 26, 2003. Plaintiff was granted leave to proceed <u>in forma pauperis</u> on a Fourth Amendment excessive force claim against the above-named defendants and a conspiracy claim against various other previously named defendants – Officers Reim, Peters, Laridean and Klein. By order of July 25, 2005, the court dismissed the conspiracy claims against defendants Reim, Peters, Laridean and Klein. Presently before the court is defendant Kristian Perales's motion for summary judgment (Docket #82), and plaintiff's motion for extension of time to file a motion for reconsideration (Docket #99). Both of these applications will be addressed herein.

## I. DEFENDANT PERALES'S MOTION FOR SUMMARY JUDGMENT

### A.    Legal Standard

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not

defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." Id. For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." Id.

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, Anderson, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. Id. at 248.

The party moving for summary judgment bears the initial burden of demonstrating that it is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. 317, 323 (1986). The moving party may satisfy its initial burden simply by pointing out that there is an absence of evidence to support the non-moving party's case. Id. at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. Id. at 322-23. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir. 1989). In considering a motion for summary judgment, the court may consider any materials that would be admissible or usable at trial, including properly authenticated and admissible documents. Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

## B. Facts

The relevant facts are taken from the defendant's Proposed Findings of Fact ("DPFF") and the plaintiff's sworn complaint to the extent that the factual assertions are undisputed and comply with Federal Rule of Civil Procedure 56(e). See Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996) (stating that by declaring under penalty of perjury that a complaint is true, the complaint is converted into an affidavit).

Defendant Perales became a Trooper with the State of Wisconsin State Patrol on January 14, 2001. (DPFF ¶¶2 and 28.) Perales began field training as a Trooper on or about January 15, 2001, and completed field training in mid-April 2001. (DPFF ¶30.) On Wednesday, February 28, 2001, at approximately 9:28 p.m., Perales was driving a patrol car on US Highway 41 northbound, just north of Highway 151, and Trooper Christopher Honish, a field training officer, was riding along. (DPFF ¶¶14, 15, 165 and 166.) Defendant Perales and Trooper Honish were contacted by Fond du Lac County and asked to back up another officer in connection with a stop of a car suspected of transporting illegal drugs from Chicago. (DPFF ¶168.) The initial stop was made quickly and without incident at approximately 9:31 p.m. by Fond du Lac County deputies. (DPFF ¶¶179 and 181.) However, as defendant Perales began approaching the vehicle to assist the county deputies, plaintiff, who was the driver, sped away. (DPFF ¶186; Am. Compl. ¶10.)

The plaintiff then led defendant Perales and Fond du Lac County deputies, including the other named defendants, on a high speed chase through Fond du Lac and Winnebago

Counties. (DPFF ¶¶188-222.) The pursuit reached speeds of about 100 miles an hour. (DPFF ¶223.)

The parties dispute what happened next. Thus, plaintiff's version of the events will be set forth first, followed by defendant Perales's version.

### 1. Plaintiff's Version of Events

Plaintiff avers that as he reached County Highway N, he was hit by officer Pfeiffer's car and lost control of the vehicle. (Am. Compl. ¶11.) He contends that defendants then used excessive force in the course of his arrest. To support his claim, he makes the following factual assertions:

> plaintiff got out of his car with his hands up at which time defendant Pfeiffer informed plaintiff to get down on the ground. Plaintiff layed [sic] on the ground without resistance as several other officers assisted Pfeiffer in handcuffing the plaintiff.

> Defendant Pfeiffer ran over to where the plaintiff was on the ground grabbed his arm and hard twisting it back behind him with his knee upon plaintiff's kneck [sic] as another officer recieved [sic] the other arm for cuffing.

> Once plaintiff was handcuffed officers Rottscholl and Pfeiffer stated angerly [sic] 'nigger you wanna run?' 'You wanna hurt officers?' 'huh?' 'you wanna run?' repeating this question as officer Pfeiffer struck the handcuffed plaintiff in the side of the face.

> Defendants Rottscholl and Pfeiffer told officer Perales who was assisting them in arresting plaintiff, that plaintiff had placed their life in danger almost dragging Rottscholl down the highway had he not jumped back from the vehicle at which time the officers began to pummel the plaintiff hitting him with fist aside his head and face and in the back of his head and kickn [sic] him in his head, face, shoulder, back.

> Officer Perales Kristian P. kicked the plaintiff in his face and said next time you are stopped you will obey, wont [sic] you boy? and kick [sic] and hit the plaintiff in the face which caused the plaintiff to put his face down in the grass fearing the officers were going to kill him.

> Defendants bust plaintiff [sic] head and face and continued to pummel him even though they could plainly see he was in no manner being resistive to their attacks and onslaught of fist and kicking with their boots, after several minutes

of this assault, plaintiff was picked up and carried to the back of his car where his pants were pulled down and his jacket pulled down around his arms even though it could not be taken off due to being handcuffed.

(Am. Compl. ¶¶11-16.)

Plaintiff further describes the beating he received from defendants as "severe" which caused "swelling . . . pain, cuts [and] migrain [sic] headaches." (Am. Compl. ¶18.)

### 2. Defendant Perales's Version of Events

Defendant Perales denies that he used any force against plaintiff and that he witnessed any other officer, including the other named defendants, use force against plaintiff. (DPFF ¶322 and 323; Perales Aff. ¶96; Honish Aff. ¶162.) Perales and Trooper Honish both state that they did not see the two deputies physically handcuff Mr. Jackson. (DPFF ¶¶234 and 235; Honish Aff. ¶102; Perales Aff. ¶57.) While defendant Perales states that he did not participate in the physical arrest of plaintiff, he admits to performing a pat down search of plaintiff but avers that in doing so he "complied with all State Trooper policies and training." (DPFF ¶237; Perales Aff. ¶59.)

Defendant Perales also denies plaintiff's contention that he kicked plaintiff in the face and that he, along with the other defendants, continued to pummel plaintiff after he was subdued. (DPFF ¶307, 310 and 314; Perales Aff. ¶86, and 88-90.) In addition he denies making derogatory statements to plaintiff. (Id.)

In his affidavit, Trooper Honish attests that he did not "observe Trooper Perales kick Mr. Jackson in his face and say 'next time you are stopped you will obey, won't you boy?'" (DPFF ¶311; Honish Aff. ¶154.) He further states that he did not see the defendants continue to "pummel" plaintiff. (DPFF ¶315; Honish Aff. ¶156.)

With respect to plaintiff's claim that he failed to intervene when the other named defendants used excessive force, defendant Perales offers his sworn testimony and that of Officer Honish, in which they make the following averments:

> Troopers Honish and Perales did not see Fond du Lac County Sherriff's Deputies Pfeiffer and Rottschol, or any other police officer, pummel Mr. Jackson or hit him with a fist on the side of head, face or in the back of his head, nor did Troopers Honish and Perales see Fond du Lac County Sheriff's Deputies, or any other police officer, kick Mr. Jackson in his head, face, shoulder and back.

> Troopers Honish and Perales did not see Fond du Lac County Sheriff's Deputies Pfeiffer and Rottscholl, or any other police officer, 'bust plaintiff head and continue[] to pummel him even though they could plainly see he was in no manner being resistive to their attacks and onslaught of fist and kicking with their boots, after several minutes of this assault, plaintiff was picked up and carried to the back of his car where his pants were pulled down and his jacket pulled down around his arms even though it could not be taken off due to being handcuffed.'

(DPFF ¶309 and 316; Perales Aff. ¶¶87 and 91; Honish Aff. ¶¶153 and 157.)

## C.    Analysis

Defendant Perales argues that he is entitled to summary judgment on plaintiff's excessive force and failure to intervene claims because the facts establish that he utilized only the minimum amount of force necessary to affect a proper pat down search and he did not observe any other defendants using excessive force during plaintiff's arrest. (Def.'s Br. in Supp. of Summ. J. at 5-6.) Plaintiff argues that defendant's motion must be denied because there are genuine issues of material fact that defeat summary judgment.

### 1.    Excessive Force Claim

Claims that law enforcement have used excessive force in the course of an arrest are analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386 (1989); see also Abdullahi v. City of Madison, 423 F.3d 763, 768 (7th Cir. 2005). The reasonableness inquiry is objective: "the question is whether the officers'

actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. The amount of permissible force depends on the specific situation, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

The plaintiff states in his sworn complaint that defendant Perales "kicked the plaintiff in his face," "hit the plaintiff in the face" and "continued to pummel him even though they could plainly see he was in no manner being resistive to their attacks and onslaught of fist and kicking with their boots . . . ." Defendant Perales, on the other hand, has testified that the only contact he had with plaintiff was the pat down search and that no force was used against the plaintiff, by him or any other officer.

The parties' dispute over whether defendant Perales used physical force against the plaintiff constitutes a genuine issue of material fact that precludes summary judgment. Accordingly, the defendant's motion for summary judgment on this claim will be denied.[1]

### 2. Failure to Intervene

Under prevailing Seventh Circuit precedent,

[a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under §1983 if that officer had reason to know: (1) that excessive force was being used; (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; and

_____

[1]Defendant Perales argues that his motion for summary judgment should be granted because plaintiff did not provide specific responses to his findings of fact in compliance with Civil Local Rule 56.2(b)(1) and this court should not have to "scour the record to determine what, if any, disputed material facts exist." However, notwithstanding plaintiff's failure to comply with Civil Local Rule 56.2, the court did not need to look beyond the sworn complaint to discover the existence of disputed material facts.

the officer had a realistic opportunity to intervene to prevent the harm from occurring.

Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis in original).  Further, controlling authority makes it clear that the prongs of this analysis almost always implicate questions of fact for the jury: "Whether an officer had a sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all of the evidence, a reasonable juror could not possibly conclude otherwise." Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 478 (7th Cir. 1997).

Defendant Perales argues that he is entitled to summary judgment on this claim because he did not observe any other defendants or any other officer using excessive force during plaintiff's arrest.  However, plaintiff's testimony in his sworn complaint that all defendants participated in "bust[ing]" his head and face and "pummel[ing]" him creates a genuine issue of material fact as to whether defendant Perales had knowledge that unreasonable force was being applied and an opportunity to intervene to prevent the harm. Therefore, defendant Perales is not entitled to summary judgment on this claim.

### 3. Failure to Sign Medical Release Form

Defendant Perales also argues that he is entitled to judgment in his favor because plaintiff did not sign a medical release form to allow defendants access to his medical records. He argues that dismissal is warranted because he has been put at a distinct disadvantage due to plaintiff's refusal to sign the medical release.

Defendants have not provided the court with any controlling authority to support his contention that a plaintiff's refusal to sign a medical release, without more, warrants dismissal of plaintiff's claims.  Further, the court notes that defendant Perales did not file a motion to compel plaintiff to sign the medical release which would have been the more appropriate

vehicle in which to resolve this issue. Indeed, plaintiff states in his "Declaration in Opposition to Defendant [sic] Motion for Summary Judgment" that he notified the defendants and the court by letter of September 23, 2005, that he "would release additional private medical records if the court deemed necessary." (Docket ##74 and 94.) Accordingly, defendant Perales is not entitled to summary judgment solely because plaintiff has refused to sign a medical release.

## II. PLAINTIFF'S MOTION FOR EXTENSION OF TIME

Plaintiff has filed a motion seeking a "30-day extension of time, extending the 10-day time period that allows [him] to file a motion for reconsideration, re-argument and/or motion to alter or amend the order, decision and judgment that was entered by this court on 3-31-2006." The ten-day time period which plaintiff seeks to enlarge is set forth in Rule 59(e), Federal Rules of Civil Procedure, which governs motions seeking to alter or amend a judgment. To date, a judgment has not been entered in this case. Thus, it is premature for plaintiff to seek relief under Rule 59(e).

The March 31, 2006, order which plaintiff seeks to challenge denied plaintiff's motion to file a second amended complaint. The denial of a motion to amend a complaint is an interlocutory order. All interlocutory orders remain subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims to which they pertain. See Cameo 21 Convalescent Ctr., Inc. v. Percy, 800 F.2d 108, 110 (7th Cir. 1986) (stating that district courts have the inherent authority to reconsider their interlocutory orders at any time). Thus, unlike motions filed pursuant to Rule 59(e), motions to reconsider interlocutory orders need not be initiated within 10 days of entry of the order in question. Therefore, because plaintiff is not required to file a motion for reconsideration of the March 31, 2006, order within ten days of

entry of that order, his motion seeking to "extend[] the 10-day time period" will be denied, as moot.

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that defendant Perales' motion for summary judgment (Docket #82) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for extension of time (Docket #99) be and hereby is **DENIED, AS MOOT**.

Dated at Milwaukee, Wisconsin, this 27th day of April, 2006.

s/Lynn Adelman
LYNN ADELMAN
U.S. District Judge